**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| ROE, JOHN, et al., | : | |
| | : | Case No. 3:15-cv-00111-TMR |
| Plaintiffs, | : | |
| | : | Judge Hon. Thomas M. Rose |
| -vs- | : | |
| | : | |
| AMAZON.COM, et al., | : | |
| | : | |
| Defendants. | : | |

_____

**DEFENDANT BARNES & NOBLE, INC.'S MOTION FOR
SUMMARY JUDGMENT**

_____

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendant Barnes &

Noble, Inc. ("Barnes & Noble") moves this Court to grant summary judgment on all claims

asserted in Plaintiffs' Complaint against Barnes & Noble.  A memorandum in support is attached

hereto.

Respectfully submitted,

/s/ Aneca E. Lasley
Aneca E. Lasley (0072366)
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
614.365.2700
614.365.2499 (facsimile)
aneca.lasley@squirespb.com

*Attorney for Barnes & Noble, Inc.*

------

### MEMORANDUM IN SUPPORT

------

## I.  INTRODUCTION

Barnes & Noble is a bookseller that sells books through its retail stores and online. Plaintiffs seek to hold Barnes & Noble liable for selling a book with their photo on the cover. Because Barnes & Noble did not select the photo or have any reason to believe its use on the cover was unauthorized, Plaintiffs' claims must fail as a matter of law.

## II.  FACTUAL BACKGROUND

The relevant facts are undisputed.[1]  Barnes & Noble is a bookseller that operates retail stores throughout the country and an e-commerce website, www.barnesandnoble.com ("BN.com").  *See* Declaration of David Bock at ¶2 ("Bock Decl.") (attached as Exhibit 1).

The book at issue in this case is called *A Gronking to Remember*.  Its author, writing under the pseudonym Lacey Noonan ("Noonan"), published the book through multiple platforms:  as a "print-on-demand" hardcopy through CreateSpace publishing (the "CreateSpace Edition"); and as an electronic book through Amazon.com (the "Kindle Edition"), Apple (the "iBook Edition"), and Barnes & Noble's NOOK Press platform (the "NOOK Book Edition"). *See* Declaration of Greg McKenna at ¶¶1, 5 ("McKenna Decl.") (attached as Exhibit 2).  Barnes & Noble offered for sale and sold the CreateSpace Edition and the NOOK Book Edition.  *See* Bock Decl. at ¶3.  Noonan determined the content of the book, including its cover, in both

------

[1] Rather than engage in unnecessary discovery, Barnes & Noble accepts for the purposes of this Motion the facts, but not the conclusions of law, put forward by Plaintiffs in their Complaint.  The attached affidavits establish additional facts relevant to the Motion, none of which materially contradict the factual allegations in the Complaint.  Acceptance by Barnes & Noble of Plaintiffs' allegations for purposes of this Motion underscores the absence of any genuine factual disputes in this litigation preventing summary judgment.

editions sold by Barnes & Noble (and presumably in all editions). *Id*. at ¶4; *see also* McKenna Decl. at ¶¶1, 5. Barnes & Noble took no part and exercised no discretion in authoring or editing the book or its cover. *See* Bock Decl. at ¶5; McKenna Decl. at ¶¶1, 5.

With respect to the CreateSpace Edition, Noonan used the CreateSpace platform to create a version of the book to be printed in hardcopy on an "on demand" basis, which was distributed to Barnes & Noble through Lightning Source, Inc. ("LSI"). Bock Decl. at ¶¶3, 6. Barnes & Noble offered this edition for sale on BN.com and in its retail stores pursuant to its relationship with LSI. *Id*. at ¶7. LSI printed it only "on demand" when a given customer elected to purchase it, and it was therefore not regularly stocked in Barnes & Noble's retail stores or warehouses. *Id*. Rather, when purchased, CreateSpace, through LSI, would print a hardcopy version to satisfy a particular order and send it directly to the customer or to a Barnes & Noble retail store for the customer's retrieval. *Id*. at ¶8.

With respect to the NOOK Book Edition, Noonan used Barnes & Noble's NOOK Press platform to create the e-book sold by Barnes & Noble on BN.com. *Id*. at ¶9; McKenna Decl. at ¶5. NOOK Press is a platform that allows users to publish content themselves, subject to the applicable terms and conditions. Bock Decl. at ¶10. Prior to publishing the NOOK Book Edition using NOOK Press, Noonan represented and warranted to Barnes & Noble that he held "the necessary rights, including all intellectual property rights, in and to the [book] and related content." *Id*. at ¶12 & Ex. A; *see also* McKenna Decl. at ¶16(d). At the same time, he also represented and warranted that the book could be "sold, marketed, displayed, distributed and promoted [by Barnes & Noble *without violating or infringing the rights of any other person* or entity, *including, without limitation*, infringing any copyright, patent, trademark or *right of privacy*, or any other intellectual or industrial property right, title or interest of any party, and

without obligating Barnes & Noble to pay any fees to third parties." Bock Decl. at ¶14 & Ex. A; *see also* McKenna Decl. at ¶16(d) (emphasis added).

In the ordinary course of operating NOOK Press, Barnes & Noble does not write or edit content and does not represent to anyone that it possesses editorial control or undertakes any editorial review. Bock Decl. at ¶15. Approximately 70,000 vendors, many of whom are authors/self-publishers, have published more than 600,000 titles using NOOK Press. *Id.* at ¶16. It would be impractical and prohibitively expensive for Barnes & Noble to endeavor to review each and every piece of content that third parties publish using NOOK Press. *Id.* at ¶17.

Barnes & Noble began listing the NOOK Book Edition with its original cover—which depicted the Plaintiffs—as Noonan uploaded it on December 31, 2014. *Id.* at ¶18. The company began listing the CreateSpace Edition, also with the original cover (i.e., the cover depicting Plaintiffs' photograph), on January 16, 2015. *Id.* at ¶19. During the time the book was available with Plaintiffs' image on the cover, Barnes & Noble sold approximately 142 NOOK Book Edition e-books and 27 CreateSpace Edition print-on-demand paperbacks. *Id.* at ¶20. This amounted to gross revenue of approximately five hundred sixty seven dollars ($567). *Id.* No one—neither Plaintiffs, their counsel, nor anyone else—notified Barnes & Noble of any issue or dispute while Plaintiffs' image was on the cover. *Id.* at ¶21.

On February 3, 2015, Barnes & Noble received a letter from Plaintiffs' counsel alleging that Plaintiffs had not authorized the use of their image on the book's cover. *Id.* at ¶22 & Ex. C. That was the first time Barnes & Noble had any knowledge of the dispute giving rise to this litigation. Shortly after receiving the letter, Barnes & Noble contacted Noonan about the allegations and to request replacement of the cover images. *Id.* at ¶23; *see also* McKenna Decl.

at ¶12.  But, in fact, Noonan had already replaced them.  Bock Decl. at ¶23 & Ex. D; *see also* McKenna Decl. at ¶¶9, 12.

On January 31, 2015, Noonan, who had also received correspondence from Plaintiffs' counsel, had uploaded a different cover for the book via NOOK Press.  Bock Decl. at ¶23; McKenna Decl. at ¶9.  The new version of the NOOK Press Edition cover did not include the Plaintiffs' image.  Bock Decl. at ¶24.  And as of February 2, 2015, CreateSpace or its affiliate removed the CreateSpace Edition from sale.  *Id.* at ¶25.  Therefore, as of February 2, 2015—the day *before* being notified of Plaintiffs' allegations—Barnes & Noble had ceased offering for sale with a cover depicting Plaintiffs' image both the NOOK Book Edition as well as the CreateSpace Edition for printing on demand thereafter.  *Id.*  The cover containing the Plaintiffs' image no longer appeared on BN.com as of that date.  *Id.*

To the extent Plaintiffs have a dispute with anyone, their dispute should be solely with Lacey Noonan.  Instead, Plaintiffs also seek to hold Barnes & Noble liable for Noonan's use of their photograph on the book, which they found offensive.  Compl. ¶5.  According to Plaintiffs, the book received widespread attention including on network late-night television and in national publications.  Because their image appeared on the cover, Plaintiffs allege they were embarrassed and made the subject of ridicule.  *Id.*  Although Barnes & Noble played no role in the book cover's design or the book's contents and took immediate steps, after being notified of the dispute, to cease selling the book with Plaintiffs' image on the cover, Plaintiffs assert three claims against Barnes & Noble: 1) violation of Chapter 2741 of the Ohio Revised Code, (i.e., Ohio's Right of Publicity Statute); 2) invasion of privacy; and 3) violation of Restatement (Second) Torts 652.  But on these undisputed facts, Plaintiffs have no actionable claim against Barnes & Noble.  Ohio law does not create liability for Barnes & Noble's sale of the book with

Plaintiffs' image on the cover, and any attempt to extend Ohio law that far would run afoul of the First Amendment.[2]   Accordingly, this Court should grant summary judgment in Barnes & Noble's favor.

## III.  LAW & ARGUMENT

### A.  Legal Standard

Summary judgment is appropriate here because "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under this well-established standard, summary judgment is proper whenever the non-moving party fails to bear its burden of proof on a particular issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Indeed, the non-moving party may not rest upon the mere allegations of his pleadings, but must set forth, through competent and material evidence, specific facts showing that there is a genuine issue for trial.  *Id*. at 322.  The "mere existence of a scintilla of evidence" is not enough.  *Sierra Club v. ICG Hazard, LLC*, 2015 U.S. App. LEXIS 1283, at *6 (6th Cir. Jan. 27, 2015) (*citing White v. Baxter Healthcare Corp*., 533 F.3d 381, 389 (6th Cir. 2008)).

To establish a claim under Plaintiffs' first count, violation of Ohio's Right of Publicity statute, Plaintiffs most prove that Barnes & Noble used "any aspect of [their] persona for a

---

[2] The Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, also bars Plaintiffs' claims as to Barnes & Noble.  Although Barnes & Noble provides an interactive computer service, Plaintiffs seek to hold Barnes & Noble liable as the publisher or speaker of Lacy Noonan's book..  The CDA does not permit them to do so.  It "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (*quoting Zeran v. Am. Online, Inc*., 129 F.3d 327, 330 (4th Cir. 1997)).  *See also* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.").  The CDA's carve-out for intellectual property claims does not extend to Plaintiffs' Ohio state law claims.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (holding that the exception applies only to federal intellectual property claims).

commercial purpose" during their lifetimes or within a period of sixty years after their deaths. Ohio Rev. Code 2741.02.

Because Ohio law adopts the Restatement as the Ohio common law on invasion of privacy, Plaintiffs' second and third claims are identical. *See James v. Bob Ross Buick, Inc.,* 855 N.E.2d 119, 122 (Ohio Ct. App. 2006) ("Ohio has adopted the tort of misappropriation of the name or likeness of another as propounded by the Restatement.") (*citing Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E.2d 454 (Ohio 1976)); *Alahverdian v. Grebinski*, 2014 U.S. Dist. LEXIS 68347, at *34 (S.D. Ohio May 19, 2014) ("In recognizing the tort of invasion of privacy, the Ohio Supreme Court adopted Restatement of Torts § 652(A)"). Under Ohio law, in accord with Restatement (Second) Torts § 652A:

> [T]he tort of invasion of privacy includes four separate torts: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

*James,* 855 N.E.2d at 122. Among these, the Complaint appears to plead only appropriation. *See* Compl. ¶7 (alleging "wrongful appropriation").[3] To establish a claim based on appropriation, Plaintiffs must prove "something more than incidental publication of name or

---

[3] Plaintiffs do not use the phrase "false light" in the Complaint. More importantly, this theory of recovery is unavailable when, as in this case, "the statement obviously purports to be fictitious." Restatement (Second) Torts § 652E, Reporters Notes, cmt. a (*citing Hicks v. Casablanca Records*, 464 F.Supp. 426 (S.D.N.Y.1978)). *See Botts v. N.Y. Times Co*., 2003 U.S. Dist. LEXIS 23785, at *19–20 (D.N.J. Aug. 29, 2003) ("Where a statement obviously purports to be fictitious, there can be no falsity of the publicized matter, and, therefore, no reckless disregard for such falsity.") (dismissing a claim for false light publicity where an advertisement used a real person's name in association with the image of another individual in a fictional setting). The images of individuals on the cover of a fictional book obviously purport to be fictitious with regard to any connection between those individuals and the contents of the story in the book. *See also* McKenna Decl. at ¶2 (describing book as "a work of pure fiction").

likeness . . . .  Rather, 'defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness.'"  *Jackson v. Playboy Enterprises, Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983) (*quoting* Restatement (Second) Torts § 652C cmt. C).

### B.  Barnes & Noble Did Not Know or Have Reason to Know that Any Use of Plaintiffs' Image was Unconsented; Therefore, the First Amendment Does Not Permit Barnes & Noble to be Held Liable

Plaintiffs' claims against Barnes & Noble fail as a matter law for the sole reason that Barnes & Noble did not know or have reason to know that the book depicted the Plaintiffs' image without their consent.  *See* McKenna Decl. at ¶18; *see also* Bock Decl. at ¶5.  As a result and as set forth in Section C below, Barnes & Noble's use of Plaintiffs' image was necessarily merely incidental, not a commercial use or actionable appropriation as Plaintiffs allege, and Ohio law, properly construed, does not extend liability to Barnes & Noble; however, even if Ohio law could otherwise be construed so broadly, the First Amendment does not permit booksellers to be held strictly liable for an author's torts.

The First Amendment carefully protects the right to distribute books.[4]  To prevent chilling and self-censorship, bookstores and other distributors generally have no duty to monitor the content of the material they distribute.  *See, e.g.*, *Lerman v. Flynt Distributing Co.*, 745 F.2d. 123, 139 (2d Cir. 1984), *cert denied*, 471 U.S. 1054 (1985) (stating that "national distributor of hundreds of periodicals has no duty to monitor each issue" and that "[s]uch a rule would be an impermissible burden on the First Amendment").  If it were otherwise, "the bookseller's burden would become the public's burden . . . ," and "[i]f the contents of bookshops and periodical

---

[4] In addition to the First Amendment arguments set forth herein, Barnes & Noble adopts and incorporates by reference the arguments and principles of law set forth in co-defendant Apple Inc.'s memorandum in support of its summary judgment motion at Argument § II.

stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed." *Smith v. California*, 361 U.S. 147, 153 (1959).

As a result, states may not impose criminal or civil liability against booksellers or other distributors for distribution where the distributor neither knew nor had any reason to know of alleged wrongdoing pertaining to specific content. *Id.*; *Cubby, Inc. v. CompuServ, Inc.*, 776 F. Supp. 135, 139–41 (S.D.N.Y. 1991) (granting summary judgment for defendant on claims of libel, business disparagement, and unfair competition based on allegedly defamatory statements made in publication carried on defendant's computerized database and noting that the First Amendment guarantees identified in *Smith*, which stand in the way of imposing strict liability, apply equally to distributors in civil cases where "[t]he fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute"). Actual malice is required. *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 319 (D.D.C. 2011) ("[A]s the Supreme Court has observed, anything short of actual malice would impose a tremendous burden on distributors such as booksellers to make themselves aware of the contents of the material they distribute.") (*citing Smith*, 361 U.S. at 153).

Numerous other courts have appropriately declined to impose civil liability for distributors of books that are subsequently alleged to be defamatory or to violate others' rights. *See, e.g.*, *Parisi*, 774 F. Supp. 2d at 319 (granting bookseller defendants' motions for summary judgment and to dismiss numerous torts including defamation and invasion of privacy based upon internet listing and sales of book, and observing that because "the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern,' plaintiffs cannot circumvent the constitutional requirement of actual malice in seeking recovery for other torts associated with the

defendants' distribution of allegedly defamatory material") (*quoting Hustler Magazine v. Falwell*, 485 U.S. 46, 50–57 (1988)); *Sandler v. Calcagni*, 565 F. Supp. 2d 184, 195 (D. Me. 2008) ("BookSurge as an independent company that transforms PDF documents into books with no editorial control and no communal process with the author, can only be found liable if it knew or had reason to know of the alleged defamation."); *Maynard v. Port Publications, Inc.*, 297 N.W.2d 500 (Wis. 1980) (finding contract printer not liable because "those who are held liable for defamation because of their role in the publication process must know or have reason to know of the existence of the libel"); *see also Bierman v. Weier*, 826 N.W.2d 436, 461 (Iowa 2013) (rejecting argument ". . . that because ASI falls into some kind of 'no man's land' in between contract printer and traditional publisher, it can be subject to strict liability."); *Parks v. Noisivision, 2004 U.S. Dist. LEXIS 27438* (E.D. Mich. Dec. 15, 2004) (concluding that "[t]here is no colorable basis for imposing any contributory or several liability on Borders" with respect to the creation and distribution of albums alleged to violate Rosa Park's right of publicity where Borders was "a retailer that had nothing to do with writing or naming the song in question") (*citing Rose v. Giamatti*, 721 F. Supp. 906 (S.D. Ohio 1989)).

*Sandler v. Calcagni,* a case involving online self-publishing, provides a particularly useful analogy to the present litigation. In *Sandler*, an author used BookSurge to self-publish a book containing allegedly defamatory statements. The court explained BookSurge's business model, which was functionally identical to the role played by Barnes & Noble in this case, relating to its self-publishing platform:

> BookSurge is paid by self-publishing authors to print and bind PDF-formatted manuscripts using print-on-demand ("P.O.D.") technology. P.O.D. generally refers to digital methods that allow printing and binding of a complete book in a very short period of time. P.O.D. technology also facilitates production of books in very small lots, rather than hundreds or thousands at once.
>
> . . .

> BookSurge does not review submissions for content.  BookSurge offers no fact-checking or similar editing services.  If a BookSurge author or customer wishes to purchase technical editing services, these services are outsourced and performed by another, unaffiliated entity.

*Sandler*, 565 F. Supp. 2d at 187; *see also id*. at 190 ("BookSurge and its employees do not read or review the manuscripts they print, and BookSurge and its employees did not read or review the manuscript submitted to them by Ralph Calcagni.  Nor did BookSurge and its employees know anything about the substance of [the events described in the book].").

In *Sandler*, the court acknowledged that "[b]ecause BookSurge does not undertake to edit, review or fact-check any of its publications, it has no means or way of knowing whether defamatory material is contained within the works that it publishes."  *Id*. at 195.  Thus, BookSurge could "only be found liable if it knew or had reason to know of the alleged defamation."  *Id*.  The court concluded that BookSurge had no knowledge and "no duty to inspect the work that came before it for defamation."  *Id*. at 196.  Therefore, it could not be found liable for the alleged defamation.

Although *Sandler* involved a claim for defamation and not appropriation or right of publicity, the principles of law and legal analysis conclusively support an award of summary judgment on Plaintiffs' claims as against Barnes & Noble.  First, it recognizes (along with other courts) that there is no basis for strict liability for bookselling intermediaries.  Second, *Sandler* also recognizes, along with prior precedent concerning booksellers, the real-world challenges that preclude a self-publishing platform from seeking to police every piece of content it reproduces.  Like BookSurge, Barnes & Noble cannot realistically review every aspect of all the content it makes available through NOOK Press.  Ohio law cannot be interpreted consistently with the First Amendment to impose a duty to take on this impossible and socially unproductive

task. Finally, *Sandler* appropriately limits liability to those instances where intermediaries like Barnes & Noble knew or had reason to know of the allegedly tortious conduct.

Here, Barnes & Noble did not know or have reason to know that Noonan allegedly used the Plaintiffs' image without their consent. To the contrary, Noonan affirmatively represented to Barnes & Noble that the book could be "sold, marketed, displayed, distributed and promoted [by Barnes & Noble] ***without violating or infringing the rights of any other person*** or entity, ***including, without limitation***, infringing any copyright, patent, trademark or ***right of privacy***, or any other intellectual or industrial property right, title or interest of any party, and without obligating Barnes & Noble to pay any fees to third parties." Bock Decl. at Ex. A & ¶14; *see also* McKenna Decl. at ¶16(d). Upon learning of Plaintiffs' allegations, Barnes & Noble immediately took action to ensure that the disputed image was replaced, only to find that Noonan had already replaced it. Bock Decl. at ¶23 & Ex. D.; *see also* McKenna Decl. at ¶12. As a result, the Court should grant summary judgment in Barnes & Noble's favor on all of Plaintiffs' claims.

    **C.**    **Barnes & Noble's Did Not Use Plaintiffs' Image for Its Own Benefit; Therefore, Barnes & Noble Cannot be Held Liable Under Ohio Law**

        **1.**    **Barnes & Noble Did Not Use Plaintiffs' Image for a Commercial Purpose Under Ohio Revised Code Chapter 2741**

Plaintiffs' claims against Barnes & Noble fail for the additional reason that Barnes & Noble did not use the Plaintiffs' image for a commercial purpose.[5] Ohio Revised Code 2741.02 only "prohibits the use of 'any aspect of an individual's persona for a ***commercial purpose*** during the individual's lifetime or for a period of sixty years after the date of the individual's

---

[5] Plaintiffs' alleged claim under the statute also fails because the book at issue was a fictional work and the statute "does not apply to . . . [a] literary work, dramatic work, fictional work, historical work, audiovisual work, or musical work regardless of the media in which the work appears or is transmitted . . . ." Ohio Rev. Code 2741.09(A). *See also* McKenna Decl. at ¶2 (describing book as "a work of pure fiction").

death.'" *Kolcun v. Nationwide Ins. Co.*, 2006 U.S. Dist. LEXIS 32835, at *28 (S.D. Ohio May 24, 2006) (emphasis added).  Plaintiffs' inability to show commercial use by Barnes & Noble is fatal to their claim.  *See id.*

Case law establishes, and common sense supports, that as with traditional bookselling, an internet bookseller's "use of book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales."  *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006).  In *Almeida*, a picture of the plaintiff taken when she was 10-years-old appeared on the cover of a book titled *Anjos Proibidos* ("Forbidden Angels").  The plaintiff argued that "Amazon should not display her image to promote the sale of *Anjos Proibidos* because she did not consent and did not receive just compensation for the use of her image."  *Id*. at 1318.

The Eleventh Circuit rejected her attempt to hold Amazon liable under a Florida statute very similar to Ohio's right of publicity statute.[6]  The Court found Amazon could not be liable for misappropriation of a an individual's picture on a book cover because "we discern no set of facts by which an internet retailer such as Amazon, which functions as the internet equivalent to a traditional bookseller, would be liable for displaying content that is incidental to book sales, such as providing customers with access to a book's cover image and a publisher's description of the book's content."  *Almeida*, 456 F.3d at 1326.  The Eleventh Circuit determined "it is clear from Almeida's complaint that Amazon did not use Almeida's image for trade, commercial, or advertising purposes as those terms are used in the statute."  *Id*. at 1325.

---

[6] In *Bosley v. WildWetT.com* the court reviewed Florida and Ohio's statutes concerning the right of publicity and determined it was unnecessary to undertake a choice of law analysis in that case because "there is no significant difference between Ohio and Florida law as to the issues of concern at this stage of the litigation."  310 F. Supp. 2d 914, 919 (N.D. Ohio 2004).

Plaintiffs here present an almost identical claim to the plaintiff in *Almeida*.  Like her, they assert that their picture was used to promote a book without their consent and without just compensation.  Like her, they seek to hold an internet retailer functioning in a manner equivalent to a traditional bookseller who had no knowledge of the alleged infringement.  *Almeida*, 456 F.3d at 1319 ("[T]here is no indication that Amazon had knowledge or should have had knowledge that the book cover displayed an image that the author and publisher were not authorized to use.")  In that strikingly similar case, the Eleventh Circuit determined that the plaintiff's complaint did not state a claim against Amazon because Amazon was simply not using the plaintiff's image for anything beyond an incidental purpose.  That analysis and resultant conclusion apply with equal force here to Plaintiffs' claim against Barnes & Noble.

      **2.**      **<u>Incidental Use by Barnes & Noble of Plaintiffs' Image Cannot Support Liability for Invasion of Privacy Under Restatement § 652 or Ohio's Common Law</u>**

The Eleventh Circuit's persuasive and common-sense rationale in *Almeida* similarly demonstrates that Plaintiffs' claims for violation of their common law of privacy interests against Barnes & Noble must fail.  Under Ohio law, "one who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Reeves v. Fox TV Network*, 983 F. Supp. 703, 710 (N.D. Ohio 1997) (*quoting Vinci v. American Can Co.*, 459 N.E.2d 507 (Ohio 1984) (¶2 of the syllabus)); *see* Restatement (Second) of Torts § 652C.  Ohio law distinguishes between "mere incidental use of a person's name and likeness, which is not actionable, from appropriation of the benefits associated with the person's identity, which is." *Zacchini v. Scripps-Howard Broadcasting Co.* 47 Ohio St.2d 224, 229, 351 N.E.2d 454 (1976), *reversed on other grounds* 433 U.S. 562 (1977); *see also Bosley v. WildWetT.com*, 310 F. Supp. 2d 914, 920 (N.D. Ohio 2004) ("[I]ncidental use of one's name or likeness is permissible.") (*citing Vinci v. American Can Company*, 591 N.E.2d 793 (Ohio Ct. App. 1990)).

Accordingly, Plaintiffs must show that the defendant "appropriated to *his own use or benefit* the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Reeves*, 983 F. Supp. at 710 (emphasis added) (*quoting Powell v. The Toledo Blade Co.*, 19 Media L. Rep. 1727 (Lucas C.P. 1991)); *see also* Restatement (Second) Torts § 652C cmt. C.

The Court in *Almeida* relied on Ohio precedent concerning common law rights under the tort of appropriation to reach its conclusion that Amazon's use of the plaintiff's photo was "merely incidental" and therefore not actionable. *See Almeida,* 456 F.3d at 1326 (*citing Vinci*, 591 N.E.2d at 794, with parenthetical text: "holding that the mention of Olympic athletes' names was incidental to the promotion of Dixie Cups, and thus not a violation of Ohio's common law right of appropriation, because the use was purely informational and there was no implication that the athletes used, supported, or promoted the product.")  Plaintiffs' common law claim is barred by the same facts as their alleged statutory claim.  The Eleventh Circuit's analysis in *Almeida* that a bookseller's use of a book cover provided by a third-party is "merely incidental" is fatal to Plaintiffs' claims under the common law as well.  *See Almeida,* 456 F.3d at 1326.

Barnes & Noble's use of the Plaintiffs' image was plainly incidental to its typical sale of books both online and in store.  Barnes & Noble did not write the book and was not involved in any way in deciding what image would appear on the book's cover.  *See* Bock Decl. at ¶¶4–5; McKenna Decl. at ¶¶1, 5.  Barnes & Noble thus cannot be held liable for the invasion of Plaintiffs' privacy when it merely sold books, which incidentally had Plaintiffs' image on the cover.  At best Plaintiffs have alleged use  of their image that was merely incidental to the sale of books and not intended to appropriate any benefit from Plaintiffs' image.  For this additional

reason, the Court should grant summary judgment in Barnes & Noble's favor on the Plaintiffs' claims for invasion of privacy under Ohio's common law.

## IV.     <u>CONCLUSION</u>

For all of the foregoing reasons, and for the reasons stated in the briefs filed by co-defendants Amazon.com and Apple, Defendant Barnes & Noble's Motion for Summary Judgment on the Complaint should be granted in its entirety.

Dated:  June 5, 2015

Respectfully submitted,

/s/ Aneca E. Lasley
Aneca E. Lasley (0072366)
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
614.365.2700
614.365.2499 (facsimile)
aneca.lasley@squirespb.com

*Attorney for Barnes & Noble, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the fifth day of June, 2015, the foregoing document was filed electronically with the Clerk of Court using CM/ECF system, and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.


/s/ Aneca E. Lasley
Aneca E. Lasley (0072366)
*Attorney for Barnes & Noble, Inc.*