UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROE, JOHN, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:15-cv-00111 |
| | : | |
| vs. | : | U.S. Dist. Judge Thomas M. Rose |
| | : | U.S. Mag. Judge Michael R. Merz |
| AMAZON.COM, INC., et al. | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM IN SUPPORT OF DEFENDANT AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

A.     Amazon And Its Self-Publishing Platforms ........................................................ 2

B.     Lacey Noonan's *A Gronking To Remember* And Its Initial Cover ................................. 5

C.     Allegations Of Infringement, Changes To The Cover, And The Roes' Lawsuit ............. 6

       1.     The Photographs Of Rob Gronkowski ........................................................ 6

       2.     The Photograph Of The Couple Alleged To Be The Roes ................................... 7

       3.     The Roes' Lawsuit ........................................................................... 9

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT ................................................................................................................. 10

A.     Amazon Is Entitled To Summary Judgment Because It Did Not Know, And Had No Reason To Know, Of Noonan's Alleged Unauthorized Use .................................... 10

B.     Denying Amazon Summary Judgment Would Improperly Lead To A Trial With No Factual Disputes That Would Require Resolution By A Jury Or Other Trier Of Fact ................................................................................................................. 15

C.     Denying Amazon Summary Judgment Would Likely Have "A Deleterious Effect On The Free Dissemination Of Information" .............................................. 16

CONCLUSION .............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Almeida v. Amazon.com, Inc.,*
 456 F.3d 1316 (11th Cir. 2006) ..................................................................... 11, 14

*Batzel v. Smith,*
 333 F.3d 1018 (9th Cir. 2003) ............................................................................ 14

*Brown v. Malicki,*
 No. 3:08-cv-141, 2009 WL 1362638 (S. D. Ohio May 14, 2009) ......................... 15

*Calvi v. Knox Cnty.,*
 470 F.3d 422 (1st Cir. 2006) .............................................................................. 16

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ............................................................................... 9, 15, 16

*F & J Enters., Inc. v. Columbia Broad. Sys., Inc.,*
 373 F. Supp. 292 (N.D. Ohio 1974) ..................................................................... 17

*Gertz v. Robert Welch, Inc.,*
 418 U.S. 323 (1974) .......................................................................................... 14

*Hedrick v. W. Reserve Care Sys.,*
 355 F.3d 444 (6th Cir. 2004) .............................................................................. 15

*Jackson v. Playboy Enters., Inc.,*
 574 F. Supp. 10 (S.D. Ohio 1983) ....................................................................... 10

*Jones v. Option One Mortgage,*
 No. 3:10-CV-307, 2010 WL 3992008 (S.D. Ohio Oct. 12, 2010) ......................... 12

*Leadbetter v. Gilley,*
 385 F.3d 683 (6th Cir. 2005) .............................................................................. 15

*Martin v. Cincinnati Gas & Elec. Co.,*
 561 F.3d 439 (6th Cir. 2009) .............................................................................. 12

*Miles Farm Supply, LLC v. Helena Chem. Co.,*
 595 F.3d 663 (6th Cir. 2010) .............................................................................. 11

*Ohio State Univ. v. Skreened Ltd.,*
 16 F. Supp. 3d 905 (2014) .................................................................................. 10

*Parisi v. Sinclair,*
 774 F. Supp. 2d 310 (D.D.C. 2011) ................................................................ 12, 13

*Pavlovich v. Nat'l City Bank,*
    435 F.3d 560 (6th Cir. 2006)............................................................ 12

*Sandler v. Calcagni,*
    565 F. Supp. 2d 184 (D. Me. 2008) ......................................... 12, 13, 17

*Santiago v. Ringle,*
    734 F.3d 585 (6th Cir. 2013)............................................................. 9

*Schultz v. Newsweek, Inc.,*
    668 F.2d 911 (6th Cir. 1982)............................................................ 15

*Smith v. California,*
    361 U.S. 147 (1960) ....................................................................... 14

*Time, Inc. v. McLaney,*
    406 F.2d 565 (5th Cir. 1969)............................................................ 17

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997)............................................................ 14

### STATE CASES

*AE, Inc. v. Goodyear Tire & Rubber Co.,*
    168 P.3d 507 (Colo. 2007) .............................................................. 10

*Dunne v. Hanson,*
    2002-Ohio-2267 ¶ 20, 2002 WL 947273 (May 10, 2002) ..................... 10

*Dupler v. Mansfield Journal Co.,*
    64 Ohio St. 2d 116, 413 N.E.2d 1187 (1980)...................................... 17

*Maynard v. Port Publ'ns, Inc.,*
    98 Wis. 2d 555, 297 N.W.2d 500 (1980) ..................................... *passim*

*Misut v. Mooney,*
    124 Misc.2d 95, 475 N.Y.S.2d 233 (N.Y. Sup. Ct. 1984) ..................... 14

*Sustin v. Fee,*
    69 Ohio St. 2d 143 (1982)............................................................... 10

*Vinci v. Am. Can Co.,*
    69 Ohio App. 3d 727, 591 N.E.2d 793 (1990) .................................... 15

### FEDERAL STATUTE

47 U.S.C. § 230(c)(1)............................................................................ 14

**STATE STATUTES**

Ohio Rev. Code § 2741 ............................................................................................................. 10

Ohio Rev. Code § 2741.09(A)(1)(a) ......................................................................................... 14

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 1 ...................................................................................................................... 15

Fed. R. Civ. P. 56(a) ................................................................................................................. 9

**OTHER AUTHORITY**

Restatement (Second) of Torts, § 652 (1977) .......................................................................... 10

## <u>INTRODUCTION</u>

John and Jane Roe ("the Roes") have sued Jane Doe (a.k.a., "Lacey Noonan"), a male author of a book called *A Gronking to Remember*.  The Roes allege that Noonan violated Ohio's right of publicity statute and the Roes' privacy rights by publishing *A Gronking to Remember* with a cover that contained a photograph of the Roes, without first obtaining the Roes' consent. Because Noonan's book was offered for sale by Amazon.com, Inc. ("Amazon"), Barnes & Noble, Inc., and Apple, Inc., the Roes have sued those entities as well.

Amazon now moves for summary judgment primarily because there is no genuine dispute that Amazon did not know, and had no reason to know, of Noonan's alleged unauthorized use of the photograph, and as a matter of law Amazon cannot be held strictly liable for Noonan's alleged misconduct.  Indeed, Noonan expressly represented to Amazon that (1) he had obtained all necessary legal rights to publish his book (including its cover) and (2) by publishing the book he would not be infringing anyone else's rights – and there was nothing about the photograph itself that would have caused Amazon to question Noonan's representations.  Amazon also cannot be held liable just because Amazon offered the book for sale or because Amazon provided platforms through which Noonan could publish his book.

This Court should grant Amazon's motion and dismiss Amazon from this action not only in light of the above, but also because denying Amazon summary judgment (1) would improperly lead to a trial with no factual disputes that would require resolution by a jury or other trier of fact and (2) would likely have, as articulated by one state's highest court, "a deleterious effect on the free dissemination of information."  *Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 297 N.W.2d 500 (1980).

## FACTUAL BACKGROUND

### A.    Amazon And Its Self-Publishing Platforms

Amazon opened its virtual doors on the World Wide Web in 1995, and it seeks to be Earth's most customer-centric company.  (Watson Decl. ¶ 2; Ex. 1).  It is guided by four principles: customer obsession rather than competitor focus, passion for invention, commitment to operational excellence, and long-term thinking.  (*Id*. ¶ 2).  Amazon serves consumers through retail websites, and it focuses on selection, price, and convenience.  (*Id.* ¶ 2).  Repeat purchases and word of mouth have combined to make Amazon a leader in online bookselling.  (*Id.* ¶ 2).  In addition to serving as a book retailer, Amazon has a full-service publishing arm called Amazon Publishing, which works closely with authors at every stage of the creative process to bring their books to life and help them find their widest potential readership.  (*Id.* ¶ 3).[1]

This case involves Amazon not as a publisher, but rather as the provider of two "self-publishing" platforms: Kindle Direct Publishing ("KDP") and CreateSpace.[2]  KDP allows authors and independent publishers to self-publish digital books, and CreateSpace enables authors and independent publishers the ability to create, publish, and distribute their books in print.  (*Id.* ¶ 4).  Both of these services allow writers of all kinds – from the experienced to the new – relatively easy and inexpensive access to millions of readers located throughout the world, all while allowing those authors and independent publishers the ability to maintain creative control over their work.  (*Id.* ¶ 4).  KDP and CreateSpace also greatly benefit consumers, who

---

[1] Amazon Publishing, which is not implicated in this case, supports authors with editorial collaboration, cover design, marketing and public relations support, fast and efficient production, and access to a global marketplace of readers.  (Watson Decl. ¶ 3; Ex. 1).

[2] Amazon's Audiobook Creation Exchange allows authors to self-publish books, in an audio format, but that service is not at issue in this case.  (Watson Decl. ¶ 4; Ex. 1).

might not otherwise learn about and/or get to read the many varied works that might never

become available to the public without the existence of self-publishing platforms. (*Id.* ¶ 4).

Amazon respects intellectual property and other rights, and takes seriously any acts

violating such rights. (*Id.* ¶ 5). Accordingly, an author seeking to self-publish through KDP or

CreateSpace must expressly represent to Amazon that he or she has obtained all necessary legal

rights to publish his or her book (including its cover) and that by publishing the book he or she

will not be infringing anyone else's rights. (*Id.* ¶ 5). KDP's Terms and Conditions, for example,

provide in pertinent part as follows:

> You [the author] represent and warrant that . . . (b) prior to you or your designee's delivery of any content, you will have *obtained all rights that are necessary* for the exercise [of] the rights granted under this Agreement; (c) *neither the exercise of the rights* authorized under this Agreement *nor any materials embodied in the content nor its sale or distribution* as authorized in this Agreement *will violate or infringe upon the intellectual property, proprietary or other rights of any person or entity, including, without limitation, contractual rights, copyrights, trademarks, common law rights, rights of publicity, or privacy, or moral rights, or contain defamatory material or violate any laws or regulations of any jurisdiction;* . . . .

KDP Terms and Conditions § 5.8 (last updated Jan. 1, 2015) (emphasis added) (Ex. 2).

Similarly, CreateSpace's Services Agreement provides as follows:

> You [the author] acknowledge that we are not the publisher of your Titles (including your Content). You represent and warrant that you will be the publisher of your Titles (including your Content) and, in any case, that *you will bear the full and ultimate responsibility for the publication and general distribution of your Titles (including your Content)*. You further represent and warrant that . . . (c) prior to your delivery of Content to us you have or have *obtained all rights, clearances and permissions* to grant the licenses you grant hereunder that are necessary for us to exercise the rights you grant under this Agreement without any further payment obligation by us . . . ; (e) *the Content (and our use thereof) is not defamatory, libelous, obscene, or otherwise illegal, does not invade any right of privacy, and does not infringe upon any Intellectual Property Right or right of publicity of any person or entity*, and any recipe, formula, or instruction contained in the Content is accurate and is not injurious to the user . . . .

CreateSpace Services Agreement § 7 (last updated Nov. 3, 2014) (emphasis added) (Ex. 3).

These concepts are reiterated in each platform's Content Guidelines, which are incorporated by reference into KDP's Terms and Conditions and CreateSpace's Member Agreement:

> *Illegal and Infringing Content.* [KDP] take[s] violations of laws and proprietary rights very seriously. It is your responsibility to ensure that your content doesn't violate laws or copyright, trademark, privacy, publicity, or other rights. Just because content is freely available does not mean you are free to copy and sell it.

KDP Content Guidelines (Ex. 4).

> *Items that Infringe Upon an Individual's Privacy.* CreateSpace holds personal privacy in the highest regard. Therefore, items that infringe upon, or have potential to infringe upon, an individual's privacy are prohibited. Additionally, the sale of marketing lists (bulk e-mail lists, direct-mail marketing lists, etc.) is prohibited.

CreateSpace Content Guidelines (Ex. 5).

Notwithstanding these express and comprehensive representations and guidelines, Amazon performs two types of checks before a self-published book may be sold on its website. (Watson Decl. ¶ 6; Ex. 1). First, Amazon reviews the book to determine whether it contains pornographic images. (*Id.* ¶ 6). Second, Amazon runs computer programs that attempt to assess whether part or all of the text of the book might be plagiarized, or whether the text contains offensive material (such as written descriptions of bestiality). (*Id.* ¶ 6).[3] But because KDP and CreateSpace are truly self-publishing services, and given the representations discussed above, Amazon does not otherwise read, edit, or fact-check self-published books. (*Id.* ¶ 7).[4]

---

[3] The Content Guidelines for both KDP (Ex. 4) and CreateSpace (Ex. 5) expressly prohibit the self-publishing of pornography or offensive material.

[4] Amazon does not read, edit, or fact-check self-published books for a variety of reasons, in addition to those specified above. For example, Amazon does not have the resources to undertake those tasks, and doing so would likely increase costs for Amazon substantially and could lead Amazon to increase the prices charged to its self-publishing customers. (Watson Decl. ¶ 7; Ex. 1).

**B.** <u>Lacey Noonan's *A Gronking To Remember* And Its Initial Cover</u>

*A Gronking to Remember* is a book written by a male author using the pen name Lacey Noonan, and it was self-published by Noonan using both KDP and CreateSpace. Noonan uploaded the book (manuscript and cover) through KDP on or about December 29, 2014, and through CreateSpace on or about December 31, 2014. (*Id.* ¶ 8). As part of that process, Noonan agreed to KDP's Terms and Conditions and executed CreateSpace's Member Agreement, each of which contained the "representations" provisions excerpted above. (*Id.* ¶ 8).

Both the KDP and CreateSpace books that Noonan uploaded in late December 2014 had a cover ("Cover A") containing various images, including two photographs of New England Patriots football player Rob Gronkowski and one photograph of a fully clothed couple (alleged to be the Roes) embracing one another:



"Cover A"

(*Id.* ¶ 9).

Prior to making Noonan's book available for sale, Amazon reviewed the book for pornographic images, and checked the text for offensive material or plagiarism, but none was detected. (*Id.* ¶ 10). Accordingly, an electronic version of the book was offered on Amazon (via

KDP) beginning on or about January 2, 2015, and a print version of the book became available (via CreateSpace) on or about January 3, 2015.  (*Id.* ¶ 10).

C.      **Allegations Of Infringement, Changes To The Cover, And The Roes' Lawsuit**

        1.      **The Photographs Of Rob Gronkowski**

        On or about January 5, 2015, within days of the book becoming available for sale, a representative of the New England Patriots, the Kraft Group, and the estate of Myra H. Kraft (collectively, "the Patriots") notified KDP (Amazon) that the use on Cover A of the two photographs of Rob Gronkowski, and specifically the inclusion in those photographs of certain trademarks, infringed the Patriots' rights.  (Ex. 6).[5]  In response, Amazon made the KDP version of the book unavailable for sale beginning on or about January 7, 2015, (Watson Decl. ¶ 12; Ex. 1), and directed Noonan to address the allegations of infringement.  (Ex. 7).  On or about January 8, 2015, Amazon received the same notice with respect to CreateSpace, (Ex. 8), and made the CreateSpace version unavailable for sale beginning on or about January 13, 2015.  (Watson Decl. ¶ 12; Ex. 1).[6]  Notably, neither of the two notices received from the Patriots reference the photograph of the couple alleged to be the Roes, much less suggested that Noonan might not have obtained all necessary legal rights to publish that photograph.

---

[5] The New England Patriots are owned by the Kraft Group.  Myra H. Kraft is the late wife of Robert Kraft, who founded the Kraft Group.  After Myra Kraft's death in mid-2011, all Patriots players wore a patch on their uniforms during the 2011-2012 season bearing her initials (MHK). The patch is visible in Cover A above.

[6] Later on or about January 13, 2015, Amazon took the added step of removing the CreateSpace version from Amazon's website altogether.  (Watson Decl. ¶ 13; Ex. 1).

On or about January 10 and 15, 2015, respectively, Noonan uploaded a new cover ("Cover B") via KDP and CreateSpace that purported to resolve the allegations by the Patriots:



"Cover B"

(*Id.* ¶ 14).  Through KDP, Noonan again represented to Amazon that he had obtained the necessary legal rights to publish Cover B and that by publishing it he would not be infringing anyone else's rights.  (*Id.* ¶ 15).  Before again making the book available for sale, Amazon reviewed Cover B not only for pornography and offensive material, but also to confirm that Noonan had addressed and resolved the Patriots' allegations of infringement.  (*Id.* ¶ 15).  On or about January 12 and 15, 2015, respectively, Amazon began reselling the book via KDP and CreateSpace with Cover B.  (*Id.* ¶ 15).

### 2. The Photograph Of The Couple Alleged To Be The Roes

Two weeks later, on or about January 29, 2015, Noonan notified Amazon by email that he had become "aware of a new third party claiming copyright on a part of the cover image for my book" and that he was "currently removing this image and replacing it with stock images that [he] ha[d] licensed for this book . . . ."  (Ex. 9).  Noonan's January 29, 2015 email, however, did not identify the complaining "third party," specify the "part of the cover image" at issue, or indicate what kind of "copyright" was implicated.

On or about January 30 and 31, 2015, respectively, Noonan uploaded via KDP and CreateSpace another new cover ("Cover C") that purported to resolve the new infringement allegation that was referenced in Noonan's January 29, 2015 email to Amazon:



"Cover C"

(Watson Decl. ¶ 17; Ex. 1). Once again, Noonan represented to Amazon (KDP) that he had obtained the necessary legal rights to publish Cover C and that by publishing it he would not be infringing anyone else's rights. (*Id.* ¶ 18). As is apparent now, the difference between Cover B and Cover C was the replacement of the photograph of the couple alleged to be the Roes with a photograph of a different fully clothed couple embracing one another. Cover C was displayed on Amazon, via KDP and CreateSpace, beginning on or about January 30 and February 1, 2015, respectively. (*Id.* ¶ 18).[7]

---

[7] The CreateSpace "detail" page for Noonan's book contained three images – one of the book's cover, one of the book's back cover, and one showing a miniature photograph of the book's cover superimposed on a person's body (to show the relative size of the book). (Watson Decl. ¶ 19; Ex. 1). Due to an oversight, the miniature photograph on the third image was only recently removed from Amazon's website. (*Id.* ¶ 19). In addition, the current version of the book displays Cover C with a slight modification – the photograph of the stadium at the bottom of Cover C now has an image of a 50-yard line instead. (*Id.* ¶ 19).

### 3. The Roes' Lawsuit

Three weeks later, on February 24, 2015, the Roes sued Amazon (and others) as a result of the apparent use of the Roes' photograph in Cover A and Cover B.  (DE #1).  The suit was filed against Amazon despite the fact that Amazon first learned about the alleged unauthorized use only *after* Noonan had already uploaded a replacement for that photograph.[8]

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once the moving party has identified what it believes shows an absence of a genuine dispute of material fact, the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Santiago v. Ringle*, 734 F.3d 585, 589 (6th Cir. 2013) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

---

[8] It was only after Amazon was sued that it learned that counsel for the Roes had sent to Amazon, via regular mail and to an address for which Amazon does not have an office, a letter dated January 29, 2015, that asserted the claims made in this case.  (Ex. 10).  The letter was received by Amazon on or about March 5, 2015, despite being marked "undeliverable" and "return to sender."  (*Id.*).  In addition, although Amazon was sued on February 24, 2015, Amazon was not served until on or about March 2, 2015, and because the summons was not served on Amazon's national registered agent, Amazon's Legal Department did not receive that summons until well after that date.

## ARGUMENT

A.  **Amazon Is Entitled To Summary Judgment Because It Did Not Know, And Had No Reason To Know, Of Noonan's Alleged Unauthorized Use**

The Roes allege that Amazon (and others) engaged in the unauthorized use of their photograph, and by doing so, (1) violated Ohio's right of publicity statute, Ohio Rev. Code § 2741, Compl. ¶¶ 1-11; (2) committed a common law tort under Ohio law, Compl. ¶¶ 12-15; and (3) violated the Restatement of Torts § 652, Compl. ¶¶ 16-17.  (DE #1).[9]  An element essential to the Roes' case against Amazon, and on which the Roes would bear the burden of proof at trial, is that Amazon knew about Noonan's alleged unauthorized use.  *Cf., e.g.*, *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 915-16 (2014) (granting summary judgment in favor of plaintiff who claimed that defendant, a print-on-demand t-shirt seller, violated § 2741, because there was apparently no genuine issue that defendant knew that it had not obtained from plaintiff a license to sell certain t-shirts and other items).[10]

In this case, however, there is no genuine dispute of material fact that Amazon did not know, and had no reason to know, of Noonan's alleged unauthorized use of the photograph of the couple alleged to be the Roes until *after* Noonan had already uploaded a replacement for that photograph.  Prior to Amazon making the book available for sale, Noonan expressly represented

---

[9] The Roes' third claim, that Amazon violated the Restatements of Torts § 652, is duplicative of the Roes' second claim.  *See Jackson v. Playboy Enters., Inc.*, 574 F. Supp. 10, 12 (S.D. Ohio 1983) (noting that in *Sustin v. Fee*, 69 Ohio St. 2d 143 (1982), the Supreme Court of Ohio made clear "that it was adopting the rule of the Restatement (Second) of Torts, § 652 (1977), for what constitutes an actionable invasion of privacy in Ohio").  Moreover, Restatements themselves do not have the force of law, but rather are summaries of the law prepared by Reporters selected by the American Law Institute.  *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 n.1 (Colo. 2007); *Dunne v. Hanson*, 2002-Ohio-2267 ¶ 20, 2002 WL 947273 (May 10, 2002).

[10] To be clear, Amazon's position is that it never "used" the photograph of the couple alleged to be the Roes to begin with, that any use was "merely incidental" (*see* footnote 15), and that any question of liability must be analyzed based on Amazon's dealings with the self-publishing author (Noonan).

to Amazon, both with respect to KDP and CreateSpace, that (1) he had obtained all necessary legal rights to publish the book (including its cover) and (2) by publishing the book he would not be infringing anyone else's rights – and there was nothing about the photograph of the couple alleged to be the Roes itself that would have caused Amazon to question Noonan's representations. Furthermore, nothing improper was detected when Amazon reviewed the book for pornographic images, and checked the text for offensive material or plagiarism. And although it is true that the Patriots alerted Amazon to alleged infringement by Noonan after the book was made available for sale, those notifications concerned only the two photographs of Rob Gronkowski and had nothing to do with the photograph of the couple alleged to be the Roes. Indeed, when Noonan uploaded to KDP new versions of the cover, he again represented to Amazon that he had obtained the necessary legal rights to publish his covers and that by publishing them he would not be infringing anyone else's rights. Under these circumstances, Amazon is entitled to summary judgment. *See, e.g.*, *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1319 (11th Cir. 2006) (affirming summary judgment for Amazon in case where woman sued Amazon under right of publicity statute, civil theft statute, and common law invasion of privacy, for selling copies of a book displaying the woman on its cover: "there is no indication that Amazon had knowledge or should have had knowledge that the book cover displayed an image that the author and publisher were not authorized to use"); *id.* at 1321 n.3 ("[A]s a factual matter, there is no indication that Amazon had knowledge of the allegedly misappropriated image and it responded promptly to [the plaintiff]'s notice by removing [the book] from its websites.").[11]

---

[11] *See also, e.g.*, *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666-67 (6th Cir. 2010) (affirming summary judgment for defendant who was alleged to have aided and abetted a breach of fiduciary duty by plaintiff's employees, because plaintiff failed to show that defendant

This Court should reject any argument that Amazon should be liable for Noonan's alleged unauthorized use of the photograph based on Amazon providing platforms through which Noonan could self-publish his book.[12] *See, e.g.*, *Parisi v. Sinclair*, 774 F. Supp. 2d 310 (D.D.C. 2011); *Sandler v. Calcagni*, 565 F. Supp. 2d 184 (D. Me. 2008); *Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 297 N.W.2d 500 (1980). In *Sandler*, for example, a woman sued a self-publishing author, a print-on-demand company (BookSurge), and another person for defamation, invasion of privacy, and intentional infliction of emotional distress.[13] Sandler's claims arose from the author's discussion of Sandler in a book the author self-published using BookSurge. BookSurge moved for summary judgment, explaining that its review of any manuscript was limited to making sure that the author's computer file would be compatible with BookSurge's print-on-demand technology, and that BookSurge did not review the submission for content and offered no fact-checking or editing services. 565 F. Supp. 2d at 187.

In analyzing the motion, the court noted that "simply because . . . BookSurge participated in the 'publication' of [the book] does not ipso facto establish liability on the part of BookSurge," *id.* at 193, and stated that liability instead turned on "the level of BookSurge's

---

knew that those employees were breaching a fiduciary duty); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 447 (6th Cir. 2009) (affirming summary judgment for defendants in negligence and product liability case, where defendants lacked the requisite knowledge of the underlying dangers at issue); *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 570-71 (6th Cir. 2006) (affirming summary judgment for defendant who was alleged to have aided and abetted the tortious conduct of another because even if Ohio recognized such a claim, plaintiff could not establish that defendant knew or was even generally aware of the primary party's wrongdoing); *Jones v. Option One Mortgage*, No. 3:10-CV-307, 2010 WL 3992008, *7-8 (S.D. Ohio Oct. 12, 2010) (Rose, J.) (granting summary judgment for defendant as to some tort claims because, among other reasons, plaintiff could not establish that defendant was aware of certain underlying facts).

[12] The complaint states that Noonan "caused [the book] to be published," and describes Amazon and the other corporate defendants as having merely "offered the book for sale." Compl. ¶ 3.

[13] BookSurge was acquired by Amazon in 2005, and in 2009 the BookSurge brand was merged with CreateSpace under the CreateSpace name. (Watson Decl. ¶ 21; Ex. 1).

responsibilities." *Id.* at 194. The court then explained that BookSurge was merely a "participant that ha[d] a minute level of involvement with the author of the alleged defamatory material" and that its process "differ[ed] substantially from that used by a traditional publishing house." *Id.* at 194. In reaching this conclusion, the court found most important that "there is no editing, no fact-checking and no review of the manuscript [by BookSurge] at all." *Id.* at 194; *see also id.* at 194 ("little communal effort between BookSurge and the author," and "limited" interactions); *id.* at 195 (describing BookSurge as having "minimal involvement" with the author).

Like BookSurge in *Sandler*, Amazon was by no means acting as a "traditional publishing house," had a "minute level of involvement" with Noonan, and did not edit, fact-check, or review his book's content (aside from the review for pornographic images, and the automated checks for plagiarism and offensive material within the text). As such, this Court should conclude, as the court did in *Sandler*, that Amazon "neither knew nor had reason to know of the alleged [unauthorized use] and therefore cannot be held liable for [any unauthorized use]." *Id.* at 196;[14] *see also Parisi*, 774 F. Supp. 2d at 317 (holding, in a self-publishing case, that Amazon was entitled to summary judgment because "[i]n short, plaintiffs . . . put forth no evidence that disputes the fact that . . . Amazon did not play a role in the creation or development of the *promotional statements* (including the defamatory statement)") (internal quotations omitted; emphasis in original); *Maynard*, 98 Wis. 2d at 568 (holding that "those who are held liable for defamation because of their role in the publication process must know or have reason to know of the existence of the libel").

---

[14] To be clear, Amazon does not concede that it would be exposed to liability for Noonan's alleged unauthorized use of the photograph at issue if Noonan had instead utilized Amazon Publishing, Amazon's full-service publishing arm.

This Court should also reject any attempt to hold Amazon liable without regard to fault, because the Supreme Court has made clear that state statutes seeking to impose strict liability on those who sell or print books that are later determined to contain injurious content cannot stand. *See, e.g.*, *Smith v. California*, 361 U.S. 147 (1960) (declaring unconstitutional a Los Angeles ordinance that dispensed with element of "scienter" – knowledge by bookseller of the contents of a book – and instead imposing strict criminal liability on bookseller possessing obscene material); *Misut v. Mooney*, 124 Misc. 2d 95, 100, 475 N.Y.S.2d 233 (N.Y. Sup. Ct. 1984) ("[S]trict liability as the applicable standard has been swept away by the Supreme Court of the United States.") (referring to *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974)); *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 564, 297 N.W.2d 500, 505 (1980) (explaining, in a case where a woman sought to hold a contract printer company liable for alleged defamatory information contained in a newspaper printed by the company, that "liability for defamation cannot be found when no fault exists on the part of the defendant").[15]

---

[15] Amazon's undisputed lack of awareness of Noonan's alleged unauthorized use provides a sufficient basis to dismiss Amazon from this action. But this Court should dismiss the Roes' claims against Amazon because of other reasons as well. For example, Ohio's right of publicity statute does not apply to "literary" or "fictional" works, Ohio Rev. Code § 2741.09(A)(1)(a), and Noonan's *A Gronking to Remember* is not a true story. In addition, pursuant to the Communications Decency Act of 1996 ("CDA"), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida*, 456 F.3d at 1321 (*quoting Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)); *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) ("[C]ourts construing § 230 have recognized as critical in applying the statute the concern that lawsuits could threaten the 'freedom of speech in the new and burgeoning Internet medium.'") (*quoting Zeran*, 129 F.3d at 330)). Moreover, the photograph at issue in this case was displayed in a manner similar to that in *Almeida*, where the court found that "Amazon's use of book cover images closely simulates a customer's experience browsing book covers in a traditional book store." 456 F.3d at 1326. The court in *Almeida* therefore concluded that "it is clear that Amazon's use of book cover images . . . is *merely incidental to*, and customary for, the business of internet book sales." *Id.* (emphasis

**B.** **Denying Amazon Summary Judgment Would Improperly Lead To A Trial With No Factual Disputes That Would Require Resolution By A Jury Or Other Trier Of Fact**

"[T]he function of summary judgment is to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact." *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id.*

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1); *see also Brown v. Malicki*, No. 3:08-cv-141, 2009 WL 1362638, *1 (S. D. Ohio May 14, 2009) (Rose, J.) (adopting summary judgment report reiterating *Celotex* standard). The summary judgment motion is now the principal tool "by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial

---

added); *see also Vinci v. Am. Can Co.*, 69 Ohio App. 3d 727, 729, 591 N.E.2d 793 (1990) ("[M]ere incidental use of a person's name or likeness is not actionable under the 'right of publicity.'"). Amazon reserves its right to more fully brief these arguments – which provide this Court with ample reason to dismiss Amazon at this stage of the proceedings – should it become necessary to do so.

with the attendant unwarranted consumption of public and private resources." *Celotex Corp.*, 477 U.S. at 327. As the First Circuit has summarized:

> Summary judgment has a unique place in federal civil litigation. Its role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources. So viewed, a grant of summary judgment does not compromise the Seventh Amendment's jury trial right because that right exists only with respect to genuinely disputed issues of material fact.

*Calvi v. Knox Cnty.*, 470 F.3d 422, 427 (1st Cir. 2006) (quotations and citations omitted).

In this case, there simply is no factual dispute, at least as to Amazon, that requires resolution by a jury or other trier of fact. As to the key question of knowledge, Amazon has demonstrated above that there is no genuine dispute of material fact that Amazon did not know, and had no reason to know, of Noonan's alleged unauthorized use of the photograph of the couple alleged to be the Roes until *after* Noonan had already uploaded a replacement for that photograph. Denying Amazon's instant motion would therefore undermine the purposes of summary judgment (described above), force Amazon to participate in a costly and an unnecessary "full-blown" trial, and lead to the unwarranted consumption of scarce public and private resources.

## C.    Denying Amazon Summary Judgment Would Likely Have "A Deleterious Effect On The Free Dissemination Of Information"

Summary judgment is especially appropriate in this case for reasons articulated by the Supreme Court of Wisconsin in *Maynard*, 98 Wis. 2d 555. In that case, a woman sued a contract printing company (Port) for defamation after it received photographic negatives of a newspaper's layout and ultimately printed the material without conducting a substantive review of the newspaper. After explaining that liability for defamation cannot be established without fault (*see* argument part A above), the Supreme Court of Wisconsin explained that Port did not know about

the alleged defamation and "ha[d] no duty to inspect for libelous content the material it contracts

to print." *Id.* at 506-07. The court then identified the substantial negative ramifications that

could result if a company such as Port were to be held responsible for defamatory content it

merely printed:

> Port, like other contract printers, provides a quick and inexpensive printing
> service that by its low cost allows access to the print media by groups that would
> otherwise not find such access. If liability for failure to inspect were imposed on
> printers like Port, they would of necessity become censors and their services
> would become more expensive. Increased costs might preclude the publication of
> small, low-budget newspapers. Such potential liability might also deter contract
> printers from contracting to print material they consider to be controversial. All
> of this would have a deleterious effect on the free dissemination of information
> which is fundamental in our society.

*Id.* at 507; *see also F & J Enters., Inc. v. Columbia Broad. Sys., Inc.*, 373 F. Supp. 292, 297

(N.D. Ohio 1974) (observing that "courts have often required a more rigid compliance with the

requirements of Rule 56(e) of the Federal Rules of Civil Procedure when the action involves a

defendant's First Amendment Rights since prolonged litigation might have a 'chilling effect' on

the exercise of such rights") (*quoting Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969);

*Dupler v. Mansfield Journal Co.*, 64 Ohio St. 2d 116, 120, 413 N.E.2d 1187 (1980) ("Summary

procedures are especially appropriate in the First Amendment area.").

The "reasoning [by the Supreme Court of Wisconsin in *Maynard*] applies equally to

today's internet-based P.O.D. [or print-on-demand] technology," *Sandler*,

565 F. Supp. 2d at 196, and to businesses like BookSurge (*Sandler*) and CreateSpace (this case)

that employ such technology. Indeed, logic dictates that the concerns expressed by the court in

*Maynard* also apply in full force to non-print services like KDP. As discussed previously, these

self-publishing platforms offer relatively easy and inexpensive access to millions of readers

throughout the world, and they greatly benefit consumers, who might not otherwise learn about

and get to read the many varied works of authors located around the world. If Amazon were to be denied summary judgment in the present case, (1) Amazon would be forced to closely examine every aspect of every book an author sought to self-publish through KDP and CreateSpace (and Audiobook Creation Exchange), (2) Amazon's costs would likely increase substantially, (3) the prices Amazon charges to its self-publishing customers could rise significantly, (4) some authors and independent publishers might no longer be able to afford to publish their works, and (5) Amazon would likely be inhibited from allowing authors to self-publish potentially controversial works. Such "deleterious effect[s] on the free dissemination of information" would be avoided by dismissing Amazon from this action.

## **CONCLUSION**

For all of the reasons set forth above, Amazon's motion for summary judgment should be granted.

Dated:  June 5, 2015                                              Respectfully submitted,

                                                                 /s/ John F. Marsh
                                                                 John F. Marsh (0065345)
                                                                 jmarsh@hahnlaw.com
                                                                 HAHN LOESER & PARKS LLP
                                                                 65 East State Street
                                                                 Columbus, Ohio 43215
                                                                 Direct: 614-233-5102
                                                                 Fax: 614-233-5107

                                                                 Deepak Gupta (admitted *pro hac vice*)
                                                                 dgupta@fbm.com
                                                                 California State Bar No.: 226991
                                                                 Erik C. Olson (*pro hac vice* pending)
                                                                 California State Bar No.: 260452
                                                                 Julia Kropp (admitted *pro hac vice*)
                                                                 jkropp@fbm.com
                                                                 California State Bar No.: 298363
                                                                 Farella Braun + Martel LLP
                                                                 235 Montgomery St., Fl. 17
                                                                 San Francisco, California 94104
                                                                 Direct: 415-954-4419
                                                                 Fax: 415-954-4480

                                                                 *Attorneys for Defendant Amazon.com, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of June, 2015, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ John F. Marsh_____

John F. Marsh (0065345)