## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**John and Jane Roe,**

    **Plaintiffs,**

**v.**                  **Case No. 3:15-cv-111**
                  **Judge Thomas M. Rose**

**Amazon.com, et al.,**

    **Defendants.**

---

**ENTRY AND ORDER DENYING DEFENDANT JANE DOE'S MOTION FOR JUDGMENT ON THE PLEADINGS, DOC. 45, AND GRANTING ALL OTHER DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT. DOCS. 23, 24, 32, 37, AND 42.**

---

Pending before the Court are a variety of motions by all Defendants. Defendant Jane Doe[1] would have the Court grant a Motion for Judgment on the Pleadings. Doc. 45. Defendants Amazon.com, Barnes & Noble Inc., and Smashwords Inc., who comprise all other remaining defendants, and who will be referred to as the "Corporate Defendants," all seek summary judgment.[2] Docs. 23, 32 (BN), 24, 37 (Amazon.com), 42 (Smashwords). Amazon.com and Barnes & Noble Inc. moved for summary judgment against the original complaint, doc. 37 & 24, and renewed their motions when Plaintiffs John and Jane Roe amended their complaint to include Smashwords, 37, 32 & 42. The instant action stems from publication of Plaintiffs' engagement photograph on the cover of an erotic book authored by Jane Doe. Plaintiffs assert three claims:

---

[1] An individual whose true identity was unknown to Plaintiffs when they filed their complaint, Jane Doe is a man named Greg McKenna who writes under the female pseudonym "Lacey Noonan.")

[2] Apple Inc. was named a defendant, but was dismissed when Plaintiff learned that Smashwords Inc. produced the books sold on the Apple Inc. site. Doc. 58.

wrongful appropriation of their persona for commercial purposes as made actionable under Ohio

Revised Core § 2741, "invasion of privacy as that tort is recognized in the State of Ohio," and "tort

liability for violation of *Restatement* (Second) of Torts 652."   Liability against Jane Doe is sought

on the theory that she authored the work in question.   Liability is sought against all other

defendants on the theory that they published Jane Doe's work.

## I.     Background

Plaintiffs allege that sometime in 2014 Defendant Jane Doe wrote a book entitled *A*

*Gronking to Remember* and had it published by Defendants, Amazon.com, Inc., Barnes & Noble,

Inc., Apple, Inc. and Smashwords3 (the "Corporate Defendants").   The Corporate Defendants

offered the book for sale on their websites in both digital formats (e.g. Nook, Kindle, iBooks) as

well as in paperback.

The cover of the book contains a photograph of Plaintiffs taken during their engagement

prior to their wedding.   Plaintiffs allege the photograph was appropriated by the Defendants for

commercial gain with neither the permission of Plaintiffs nor the permission of any lawful

copyright holder.   Plaintiffs were not compensated for the use of their image on the cover of these

books.   Plaintiffs allege they did not place the photograph on the internet for expropriation as the

color photograph on the cover of this book.

*A Gronking to Remember*, is alleged to be less than tasteful and to be offensive.   Plaintiffs

allege the use of their image has held them up to ridicule and embarrassment.   Their connection to

the book was aggravated when the book, with Plaintiffs' image on the cover, was shown in

---

3 In the case at bar, Plaintiffs did not address Smashwords by name within the complaint. Plaintiffs agreed with all defense counsel (including Smashwords current counsel) before there was a ruling on the motion for leave to amend in order to obtain an agreement to the amendment to add Smashwords, a similarly situated corporate defendant.   The amended complaint makes the same allegations against Smashwords, as a corporate defendant, as the allegations against the other corporate defendants.

nationwide media. The book was used in jokes on The Tonight Show and Jimmy Kimmel Live as well as being displayed and read before the press at media day for the XLIX Super Bowl.

Plaintiffs filed suit on February 24, 2015 in the Miami County, Ohio Court of Common Pleas naming Amazon.com, Barnes & Noble Inc., Apple Inc., and Jane Doe as defendants. Doc. 1. Defendants removed the matter to this Court on March 27, 2015. Doc. 1. Apple, Barnes & Noble and Amazon.com filed motions for summary judgment. Docs. 20, 23, 24. On July 7, 2015, Plaintiffs amended their complaint, substituting Smashwords Inc., for Apple Inc. Doc. 28. The moving parties who remained renewed their motions for summary judgment, with Smashwords adding its own. Docs. 32, 37, 39, 42. Jane Doe added a motion for Judgment on the Pleadings. Doc. 45. All pending motions have now been responded to and replies filed in their support, rendering them ripe for decision.

Plaintiffs assert claims for wrongful appropriation of their persona for commercial purposes as made actionable under Ohio Revised Code § 2741, "invasion of privacy as that tort is recognized in the State of Ohio," and "tort liability for violation of *Restatement* (Second) of Torts 652." Liability against Jane Doe is sought on the theory that she authored the work in question. Liability is sought against all other defendants on the theory that they knowingly or recklessly published Jane Doe's work.

Plaintiffs seek the recovery of actual damages, including any profits derived from and attributable to the allegedly unauthorized use. In the alternative, Plaintiffs claim entitlement to statutory damages in an amount of $10,000.00. Plaintiffs also seek an accounting from each of the Defendants in order to elect remedies. Moreover, Plaintiffs seek the recovery of punitive damages. and attorney fees, courts costs and reasonable expenses associated with the pursuit of this civil action. Alleging Defendants knew or should have known that they did not have the right

to use the Plaintiffs' persona for commercial purposes, Plaintiffs seek the recovery of treble damages. The Court will first rule upon Jane Doe's Motion for judgment on the Pleadings.

## II.     Standard for Motion on the Pleadings

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In

considering a motion for judgment on the pleadings, a court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. See Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); Fed. R. Civ. P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"); *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). In addition, a court may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Because judgment is sought on claims brought under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

**III.    Analysis of Motion for Motion for Judgment on the Pleadings**

Doe first seeks judgment on Roe's claim for commercial use of persona.   Under Ohio law a person may use an individual's persona for a commercial purpose during the individual's lifetime if the person first obtains written consent to use the individual's persona from various statutorily prescribed persons, including *inter alia*, the individual whose right of publicity is at issue. See Ohio Rev. Code § 2741.02(B).   Persona is defined as an individual's, "name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code § 2741.01(A).   Absent that consent, Ohio law provides a private right of action to an individual to recover actual or statutory damages from the person who commercially used such individual's persona. *Brauer v. Pannozzo*, 232 F. Supp. 2d 814, 820 (N.D. Ohio 2002) (citing Ohio Rev. Code §§ 2741.06, 2741.07).   There is a paucity of precedent in Ohio regarding the application of this tort. *James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 123 (Ohio App. 2006).

Defendant Jane Doe asserts she is entitled to judgment on Plaintiffs' claims under Ohio Revised Code § 2741.02 for four reasons: because Doe's use is exempt and Plaintiffs' persona has no commercial value, because, she asserts, her use of Plaintiffs' photograph on a book cover is exempt under Ohio Revised Code § 2741.09, because Plaintiffs have failed to plead any facts to demonstrate the required element of persona and because, she asserts, Defendant Doe did not use Plaintiffs' photograph for a commercial purpose.

Defendant Doe asserts there is no commercial value in Plaintiffs' persona because plaintiffs are not celebrities and because the use is allowed because of the work allegedly being a literary work.   Celebrity status is not, however, a requirement to recover under the statute.   In *James v. Bob Ross Buick*, 855 N.E.2d 119 (Ohio App. 2006)(Wolff, J.), the Second District Court of Appeals found there was value in the salesman's name because his former employer used his signature to induce prospective clients to favor Defendant. Id. at 343.

While Plaintiffs' photograph does not have widely marketable commercial value, the court in *James* found "the appropriation of a plaintiff's image is more properly in the nature of a usurpation of the plaintiff's property rights, … courts have held that it is proper to vindicate plaintiff's right to the use of his image against this deliberate violation, even if plaintiff cannot prove actual damages." *James*, 855 N.E.2d at 129 ((quoting *Ainsworth v. Century Supply Co.*, 693 N.E.2d 510 (Ill. App. 1998)).   This Court finds the Second District position persuasive, and will also adopt the property right view.

Because the Court finds Plaintiffs' persona to have commercial value, it must consider whether the persona was used for a commercial purpose:

"Commercial purpose" means the use of or reference to an aspect of an individual's persona in any of the following manners:

> (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

> (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

> (3) For the purpose of promoting travel to a place;

> (4) For the purpose of fundraising.

Ohio Rev. Code § 2741.01(B).   Thus, if a photo is a literary or fiction work or an advertisement for the literary or fiction work, it is excepted under the chapter, Ohio Rev. Code § 2741.01(B), – other uses are not excepted.   However, neither Ohio common law nor the Ohio Revised Code defines the term literary or fiction work.   Therefore, the Court must look elsewhere in the law to find a definition.

Plaintiffs propose that the Court adopt the definition of literary work found in federal copyright law, which defines a literary work as "works, other than audiovisual works, *expressed in words, numbers, or other verbal or numerical symbols or indicia*, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.SC. § 101 (emphasis added). Using this definition of "literary work," Plaintiffs submit the photo at issue does not constitute a literary or fictional work.

The Court agrees that only the author's manuscript constitutes the literary or fiction work, since it is made of "words, numbers, or other verbal or numerical symbols…" 17 U.S.C. § 101. The photo of the Plaintiffs is a separate copyrightable aspect from the manuscript. This point is highlighted by the decision to change the photo on the cover of the book. The literary or fictional work itself remained the same. Notably, the Copyright Act defines "photograph" separately under the definition for "Pictorial, graphic, and sculptural works." 17 U.S.C. § 101. Defendant Doe's manuscript is not at issue in this case, only Plaintiffs' image.

Defendant Doe also argues that Plaintiffs have not alleged the persona element under the statute. However, the statute defines persona as "an individual's name, voice, signature, photograph, image, likeness…" Ohio Rev. Code § 2741.01. Plaintiffs alleged in their complaint "The cover of the book contains a photograph of the Plaintiffs…" Pl.'s First Am. Compl. at ¶ 4. As such, Defendant's argument fails on this point as Plaintiffs allege the use of a photograph which, under the statute, constitutes the use of their persona. Defendant Doe is alleged to have appropriated a photo of the Plaintiffs and used it to assist in his production of income from his book. Defendant Doe is not entitled to judgment on the pleadings against Plaintiffs on Count I.

Plaintiffs' second claim is for common law invasion of privacy. Defendant argues that Ohio Revised Code § 2741.01(B) preempts common law rights for invasion of privacy and cites to

*Bolles v. Toledo Trust Co*., 144 Ohio St. 195 (1944) to support that proposition.   However, the current statutory provision was adopted in 1999.   In 2006 the *James* court noted that the "statutory cause of action did not supplant the common-law claim." *James*, at n.2.   The statute specifically states "The remedies provided for in this chapter are in addition to any other remedies provided for by state or federal statute or common law." Ohio Rev. Code § 2741.08.   Plaintiffs' claims for invasion of privacy have not been preempted by statute.

Plaintiffs assert common law invasion of privacy by means of appropriation.   In *Zacchini v. Scripps-Howard Broad., Co*., 351 N.E. 2d 454 (Ohio 1976), the Supreme Court of Ohio, outlined the tort of invasion of privacy by appropriation: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy, and the use or benefit need not necessarily be commercial." *Zacchini*, 351 N.E. 2d at 455.   By adopting this protection, the court sought to protect the right to the "exclusive use of [each individual's] own identity… whether the misuse is for commercial purpose or otherwise."   The court stated that the "fundamental wrong is the appropriation." Id. at 458.

Defendants attack the false light theory of invasion of privacy theory claiming it is unavailable when, "the statement obviously purports to be fictitious." *Restatement* (Second) of Torts § 652E, Reporters Notes, cmt. a (citing *Hicks v. Casablanca Records*, 464 F. Supp. 426 (S.D.N.Y. 1978)). See *Botts v. N.Y. Times Co*., 2003 U.S. Dist. LEXIS 23785, at *19–20 (D.N.J. Aug. 29, 2003) ("Where a statement obviously purports to be fictitious, there can be no falsity of the publicized matter, and, therefore, no reckless disregard for such falsity.") (dismissing a claim for false light publicity where an advertisement used a real person's name in association with the image of another individual in a fictional setting).   Here, however, if the book depicts a woman

who fantasizes of sexual acts in response to an inattentive spouse, it does not seem that the fiction is obvious.   Based upon the pleadings in this case, this remains a jury question.

Plaintiffs' third claim alleges liability under the *Restatement* (Second) of Torts § 652(e). In *Welling v. Weinfeld*, the Supreme Court of Ohio recognized the privacy tort of false light, as outlined in the *Restatement* (Second) of Torts § 652(e). *Welling v. Weinfeld*, 866 N.E. 2d 1051 (Ohio 2007).   The court held that "one who gives publicity to a matter concerning another that places the other before the public in a false light" is liable if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id*. at 464 (emphasis added).

The highly offensive standard "applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity."   There must be "such a major misrepresentation of his character, history, or activities…" that a reasonable person be offended. Id. at 472.   The knowledge element requires that the actor had "knowledge of or acted in reckless disregard as to the falsity of the matter and the false light in which the other would be placed…" Id at 472.   Liability attaches when the publishing party acts with knowledge or reckless disregard. Id. at 473.   In this case, the Roes' engagement photo was placed on the cover of "*A Gronking to Remember*", a book many might view as having obscene or pornographic references.   As the photograph in question depicts a romantic relationship, a jury may find that Doe was reckless in his disregard for insinuating a fantasized relationship between Jane Doe and Gronkowski.   Thus, Doe is alleged to have had knowledge sufficient to allow Plaintiffs to proceed against Doe on this claim.

Defendant Doe also argues that his use of the photograph on the cover of his manuscript is protected by the incidental use doctrine and cites to *Restatement* (Third) of Unfair Competition § 47 cmt. C (1995) to justify his wrongful use. This argument confuses and misstates the issue in this case – it would be relevant if the Plaintiff in this case were Ron Gronkowski, a public figure. The incidental use doctrine applies, however, only to persons with celebrity or other notorious status – which Plaintiffs did not have. Second, Plaintiffs are not claiming a right of publicity tort as defined by the Defendant. Plaintiffs' claim is for the invasion of their privacy that includes the right to the commercial value associated with their name or likeness and the wrongful appropriation of their likeness. The court in *Vinci v. Ameriican Can Co*., 591 N.E.2d 793, 794 (Ohio Ct. App. 1990) stated "Regardless of the notoriety attained… under *Zacchini*, the invasion would nonetheless be actionable." *Vinci*, 591 N.E.2d at 510.

Defendant also cites to *Jackson v. Playboy*, 574 F.Supp. 10 (N.D. Ohio 1983). *Jackson* involved three boys who were out on a public street and photographed standing next to a female police officer. The photo was then used alongside nude photos of the same police officer in a Playboy article. The boys sued Playboy claiming an invasion of privacy. The Defendant's Motion to Dismiss was sustained because the boys did not make allegations or submit facts necessary to support the elements of such a claim. The Roes have. They have alleged: that their likeness was expropriated by Defendant for his own commercial benefit; that they have suffered humiliation, embarrassment and ridicule; and that Plaintiffs have been placed by Defendant in a false light with their image on the cover of his erotic book. Thus, Defendant Doe's Motion for Judgment on the Pleadings will be denied.

## IV.     Standard of Review on Corporate Defendants' Motions for Summary Judgment

The standard of review applicable to motions for summary judgment is established by

Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250, 106 S. Ct. 2505 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324, 106 S. Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255, 106 S. Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Because summary judgment is sought on claims brought under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

## V.    Analysis of Motion for Motion for Summary Judgment

The Corporate Defendants seek summary judgment asserting that they are not publishers of the book and that any use on their part was incidental. They also claim that as distributors, they neither knew nor had any reason to know of alleged wrongdoing pertaining to specific content and that they are shielded from liability by the Communications Decency Act of 198, 47 U.S.C. §230(e)(3).

The Corporate Defendants' liability attaches or fails depending upon whether they are considered distributers or publishers. Under Ohio law, "one who appropriates to his own use or

benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Reeves v. Fox TV Network*, 983 F. Supp. 703, 710 (N.D. Ohio 1997) (quoting *Vinci v. American Can Co.*, 459 N.E.2d 507 (Ohio 1984) (¶2 of the syllabus)); see *Restatement* (Second) of Torts § 652C.   However, Ohio law distinguishes between "mere incidental use of a person's name and likeness, which is not actionable, from appropriation of the benefits associated with the person's identity, which is." *Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E.2d 454 (Ohio 1976), reversed on other grounds 433 U.S. 562 (1977); see also *Bosley v. WildWetT.com*, 310 F. Supp. 2d 914, 920 (N.D. Ohio 2004) ("[I]ncidental use of one's name or likeness is permissible."). One prong of the argument that the Corporate Defendants are not publishers focuses on the relationship between the Corporate Defendants and Defendant Doe.   The Corporate Defendants allege that they did not publish the book, but that Defendant Doe used their systems to publish it, an argument that Plaintiffs might characterized as the Corporate Defendants contractually agreeing to let the inmates run the asylum.   Notably, Plaintiffs were not a party to this contract. Additional facts concerning the publication of the book are necessary to resolve this question.

Doe uploaded the manuscript and cover of his book through Amazon's KDP, Kindle Digital Publishing, on December 29, 2014, and through CreateSpace on December 31, 2014.   As part of that process, Doe agreed to KDP's Terms and Conditions and executed CreateSpace's Member Agreement containing representations that the uploader owned all rights to the material and that no rights were being violated.   Amazon reviewed the book for pornographic images, and checked the text for offensive material or plagiarism, but none was detected.   Accordingly, an electronic version of the book was offered on Amazon beginning on January 2, 2015, and a print version of the book became available via CreateSpace on January 3, 2015.

Prior to publishing the Barnes & Noble NOOK Book Edition using NOOK Press, Doe represented and warranted to Barnes & Noble that he held "the necessary rights, including all intellectual property rights, in and to the [book] and related content."   At the same time, he also represented and warranted that the book could be "sold, marketed, displayed, distributed and promoted [by Barnes & Noble] without violating or infringing the rights of any other person or entity, including, without limitation, infringing any copyright, patent, trademark or right of privacy, or any other intellectual or industrial property right, title or interest of any party, and without obligating Barnes & Noble to pay any fees to third parties."

Barnes & Noble began listing the NOOK Book Edition with its original cover—which depicted the Plaintiffs—when Doe uploaded it on December 31, 2014.  The company began listing the hard copy CreateSpace Edition, also with the original cover (i.e., the cover depicting Plaintiffs' photograph), on January 16, 2015.  During the time the book was available with Plaintiffs' image on the cover, Barnes & Noble sold approximately 142 NOOK Book Edition e-books and 27 CreateSpace Edition print-on-demand paperbacks.

In January, the owners of the New England Patriots protested to Doe.  Doe notified Amazon that he had changed the cover, removing the Patriots' trademarks.

On January 29, 2015, Doe received a letter from the Roes' counsel objecting to the use of their photograph on the book's cover.   That same day, Doe notified Amazon by email that he had become "aware of a new third party claiming copyright on a part of the cover image for my book" and that he was "currently removing this image and replacing it with stock images that [he] ha[d] licensed for this book . . . ." (Ex. 9).

On January 30 and 31, 2015, respectively, Doe uploaded via KDP and CreateSpace another new cover that purported to resolve the new infringement allegation that was referenced in Doe's

January 29, 2015 email to Amazon. A replacement cover was displayed on Amazon, via KDP and CreateSpace, beginning on January 30 and February 1, 2015, respectively. (Id. ¶ 18).7

On January 31, 2015, Doe, who had also received correspondence from Plaintiffs' counsel, had uploaded a different cover for the book via NOOK Press. Bock Decl. at ¶23; McKenna Decl. at ¶9. The new version of the NOOK Press Edition cover did not include the Plaintiffs' image. Bock Decl. at ¶24. And as of February 2, 2015, CreateSpace or its affiliate removed the CreateSpace Edition from sale. Id. at ¶25. Thus, as of February 2, 2015, Barnes & Noble had ceased offering for sale with a cover depicting Plaintiffs' image both the NOOK Book Edition as well as the CreateSpace Edition for printing on demand thereafter. Id. The cover containing the Plaintiffs' image no longer appeared on BN.com as of that date. Id.

On February 3, 2015, two days after the Super Bowl, Barnes & Noble received a letter from Plaintiffs' counsel alleging that Plaintiffs had not authorized the use of their image on the book's cover. Shortly after receiving the letter, Barnes & Noble contacted Doe about the allegations and to request replacement of the cover images. McKenna Decl. at ¶12. It appears Doe had already replaced them. Bock Decl. at ¶23 & Ex. D; see also McKenna Decl. at ¶¶9, 12.

On February 24, 2015, the Roes filed this lawsuit. In their complaint, the Roes named as defendants Doe, Amazon.com, B&N, and Apple. The Roes did not originally sue Smashwords.

If there is a paucity of case law to interpret Ohio law regarding invasion of privacy, there is less on the question of whether the provider of a self-publishing service is a publisher. The Corporate Defendants also assert that the uncontroverted facts of the case do not warrant finding them to be publishers. They then seek to further remove themselves from liability, asserting that any use of the book cover on their sites was incidental to commercial use, and constitutionally protected at that.

Plaintiffs assert that the Corporate Defendants are publishers, not in the sense of a legal term of art such as with the elements of defamation, but in the colloquial and everyday understanding of a book publisher.   According to Plaintiffs, the Corporate Defendants provide a platform for working in concert with authors in publishing their books the same way a traditional publishing house does.   Plaintiffs assert that to publish is "to distribute copies [of a work] to the public."   *Black's Law Dictionary* 1352 (9th ed. 2009).   One publishing house, Hugo Publishing, defines the term "publish" as "a book produced and ready to be sold." Hugo House Publ'g., http://hugohousepublishers.com/publishing_process/ Ex. 1 at 1, ¶ 1, (last visited July 31, 2015). Plaintiffs assert Defendants acted as publishers when they created a platform that allowed Defendant Doe to publish his book using their publishing platform.   Plaintiffs contend traditional publishing houses use a vetting process that would have prevented Doe from distributing for sale his book with the Plaintiff's photo on the cover. As stated in *United States v. Apple, Inc*., 791 F.3d 290 at 296 (2nd Cir. 2015), "Since the invention of the printing press, the distribution of books has involved a fundamentally consistent process: compose a manuscript, print and bind it into physical volumes, and then ship and sell the volumes to the public."   The booksellers are the ones to whom the already published books are sent to be sold to the public.

Among the steps in the publishing process are editing the book for grammar and flow, marketing, and designing the book cover. Hugo House, Ex. 1 at 3 - 6.   Defendants do not conduct the editing and design steps, as their service is commonly known as self-publishing, but might also be thought of as self-editing.   Self-publishing is arguably not publishing, as that word is known in the book industry, because to publish is to place a book in final form for distribution to booksellers for sale.   "In the ordinary course of operating Nook Press, Barnes & Noble does not write or edit content..." Bock Decl. at ¶ 15.   "Amazon does not otherwise read, edit, or fact check

self-published books." Watson Decl. at ¶ 7.   "Smashwords does not… undertake[] any editorial review of the books that authors and publishers publish using its service." Coker Decl. at ¶ 8. These are steps that the author conducts as part of using the publishing platform.   However, Defendants provide a marketing platform and advertising space that the author utilizes once the book is published.   Normally, the interior of the book is also designed by the publishing house. Hugo House, Ex. 1 at 5.   Here, this step is performed via the Corporate Defendants' publishing platforms.   When the user uploads the book, it is formatted to fit the specifications for the publishing platform.   Barnes & Noble, FAQ, supra, Ex. 2. Amazon, FAQ, supra, Ex. 3 at 3 ¶ 1. Defendant Smashwords provides a style guide that outlines its formatting requirements for publication by Smashwords. Smashwords, FAQ, supra, Ex. 10 at 11 ¶ 1.   The final steps are printing and distribution. Hugo House, Ex. 1 at 7.   Defendants print the work and distribute the book which then has placed by the author on the internet for purchase by consumers visiting the bookseller sites.

While Corporate Defendants characterize themselves as "book sellers" in their motions, Barnes & Noble also submits it "contacted [Doe] about the allegations and to request replacement of the cover images." Barnes & Noble Motion for Summary Judgment at 4.   Amazon stated the same "…and directed [Doe] to address the allegation for infringement." Amazon Motion for Summary Judgment at 6.   The Corporate Defendants have a direct cost-sharing arrangement with the author. Watson Decl. Ex. 2 at 14. Coker Decl. Ex. A at 3. Bock Decl. Ex. A at 4.   Plaintiffs assert a bookseller receives books and puts them on a shelf (physical or digital) in order to sell them.   If there is a complaint about the content or the cover image on the book, a mere bookseller has no ability to require the author or the publisher to change the content or image.   Defendants not only had access to the author to request to make the changes, they were able to demand and

require Doe to change the cover image. Barnes & Noble Motion for Summary Judgment at 4 - 5. Amazon also "direct[ed] [Doe] to address the allegation of infringement." Amazon Motion for Summary Judgment at 6.   Plaintiffs contend only a publisher of a book has access to the author and the authority to change a cover image in this manner.   A book publisher has cost-sharing arrangements with the author - a mere bookseller does not.   The only things a bookseller can do: sell or not sell the book.

Corporate Defendants claim it would be impractical and prohibitively expensive for them to endeavor to review each and every piece of content that third parties publish using their presses. Plaintiffs allege that the Corporate Defendants published their image knowingly or recklessly without their consent. See McKenna Decl. at ¶18; see also Bock Decl. at ¶5.   Corporate Defendants contend their use of Plaintiffs' image was merely incidental, not a commercial use or an actionable appropriation as Plaintiffs allege, as they assert Ohio law does not extend liability to them; however, they claim even if Ohio law could otherwise be construed so broadly, the First Amendment does not permit booksellers to be held strictly liable for an author's torts.

The First Amendment protects the right to distribute books.  To prevent chilling and self-censorship, bookstores and other distributors generally have no duty to monitor the content of the material they distribute. See, e.g., *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 139 (2d Cir. 1984) (stating that "national distributor of hundreds of periodicals has no duty to monitor each issue" and that "[s]uch a rule would be an impermissible burden on the First Amendment"). If it were otherwise, "the bookseller's burden would become the public's burden . . . ," and "[i]f the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed." *Smith v. California*, 361 U.S. 147, 153 (1959).

Of course, as Corporate Defendants also make clear, this publication was not on the shelve of any bookshop, or on any periodical stand.   Thus, we are not confronted with the public burden *Smith* envisioned, one of a limited supply of ideas, but one caused by the ever-lowering barriers to publication.   Because it costs nothing to publish, books that previously were considered not worth publishing are now published.   It bears note, however, that disseminating speech was not historically free.   As the cost diminished from transcription, to printing presses, to photocopiers to the internet, however, the public is deluged, creating a cost on their end.   One can imagine a social benefit in requiring the modicum of review required to assure that no rights are violated in production. See *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (concluding that the First Amendment does not protect some types of speech because they serve "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."). For now, this Court will apply the old standards to the new technology, treating the Corporate Defendants' process as if it were next logical step after the photocopier.   Just as Xerox would not be considered a publisher and held responsible for an invasion of privacy tort carried out with a photocopier, Corporate Defendants will not be liable as publishers for the tort allegedly committed using their technology.

As Plaintiffs have not alleged facts that would allow the conclusion that the Corporate Defendants are publishers, the Court need not consider whether the Corporate Defendants knew or recklessly knew or had reason to know the Roes' rights were potentially being violated.   States may not impose criminal or civil liability against booksellers or other distributors for distribution where the distributor neither knew nor had any reason to know of alleged wrongdoing pertaining to specific content. *Smith v. California*, 361 U.S. 147, 153 (1959).

Because the Court concludes that the Corporate Defendants are not publishers, neither is it necessary to consider whether they are shielded from liability by the Communications Decency Act of 198, 47 U.S.C. §230(e)(3).

**VI.    Conclusion**

For the foregoing reasons, the Court **DENIES** Defendant Jane Doe's Motion for Judgment on the Pleadings, Doc. 45, and **GRANTS** the Corporate Defendants' Motions for Summary Judgment. Docs. 23, 24, 32, 37, and 42.   The Clerk is **ORDERED** to enter summary judgment in favor of Defendants Amazon.com, Barnes & Noble, and Smashwords, Inc. on all claims against them.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, March 15, 2016.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE